**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **DIMENSION CHURCH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:24-cv-226** |
| ) | |
| **CHURCH MUTUAL INSURANCE** ) | |
| **COMPANY,  S.I.,** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF DIMENSION CHURCH'S TRIAL BRIEF**

Plaintiff Dimension Church, by counsel, submits its Trial Brief as contemplated by this Court's Case Management Order (Doc. 14):

**I.      Procedural Posture**

**Damages and Claims to be Presented**

Plaintiff Dimension Church brought this action against Defendant Church Mutual Insurance Company for failure to pay its claim for damages caused by the Memorial Day 2024 tornado in Dexter, Missouri. Church Mutual denied coverage, claiming it had cancelled the insurance policy in February 2024 for failure by Plaintiff to pay the premium. In response, Plaintiff Dimension Church argued that Church Mutual did not properly cancel the Policy because it did not send the requisite notice of cancellation as required by the Policy.

On May 5, 2026, this Court granted partial summary judgment for Plaintiff on its breach of contract count. Doc. 38. The Court expressly found that Defendant breached the insurance Policy because it did not comply with the Policy's cancellation requirements. *Id*. at pp. 10-11. The Court also denied Defendant's summary judgment motion and will submit Plaintiff's contract damages claim and vexatious refusal claim to the jury at trial. *See id*.

1

The issues that remain are Plaintiff's damages for breach of the Policy in Count I and whether Church Mutual's refusal to pay was vexatious and unreasonable as alleged in Count II. The policy is subject to limits of $762,570.00 for real property and $115,440 for personal property. Plaintiff claims the amount of the policy limits for the damage to the real property less the $5,000 deductible and personal property damages of $80,000 in addition to pre-judgment interest on these claims at the rate of nine percent pursuant to R.S.Mo. § 408.020 from the date the claim was denied, July 23, 2024. An award of pre-judgment interest is mandatory and should be calculated from the date Church Mutual denied the claim. *Jablonski v. Barton Mutual Ins. Co.,* 291 S.W.3d 345, 349 (Mo. App W.D. 2009); *Grantham v. Shelter Mut. Ins. Co.,* 721 S.W.2d 242, 244 (Mo. App. W.D. 1986).

Plaintiff also claims vexatious refusal to pay damages and attorney's fees pursuant to R.S.Mo § 375.420. The jury will decide whether to award the additional damages and attorney's fees requested in Count II. If the jury finds in Plaintiff's favor on its vexatious refusal claims, it can award additional damages of 15% of the first $1,500.00 of loss and 10% of any additional loss. The jury will also decide whether to award attorney's fees. The Court will determine the amount of the fees if the jury awards them.

Plaintiff will move for its attorneys' fees after the trial if they are awarded by the jury. "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). "Unless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for

the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B). Eighth Circuit precedent provides that filing a post-trial motion is the proper procedure for an attorney's fees claim of this type. *See Wiley v. Mitchell*, 106 Fed. Appx. 517, 523 (8th Cir. 2004) (per curiam); *Farmer's Coop. Society v. Leading Edge Pork, LLC*, Civ. No. 16-CV-4034, 2017 U.S. Dist. LEXIS 129637 at *2, 2017 WL 3496498 (N.D. Iowa August 15, 2017); *Nat'l Union Fir. Ins. Co. of Pittsburgh v. Donaldson Co.,* Civ. No. 10-4948, 2016 U.S. Dist. LEXIS 104830, 2016 WL 4186930, at *4 (D. Minn. Aug, 8, 2016) (discussing *Wiley*); *Nelson v. Frana Cos.,* No. 13-CV-2219, 2017 U.S. Dist. LEXIS 96320, 2017 WL 2683957at *1 (D. Minn. June 21, 2017).

## II.    Remaining Substantive Claims

Because the Court granted partial summary judgment for Plaintiff on the breach of contract claim, many of the substantive issues in the case have been resolved in Plaintiff's favor. However, there are some issues for the jury to decide.  There are several paths for Plaintiff to receive an award of the Policy limits for damage to the building. Plaintiff has submitted proposed jury instructions which provide that the jury should first determine whether the tornado caused the building to be a total loss for purposes of R.S.Mo. § 379.140.1. If so, then, for the building part of the damages claim, the jury should award $762,570 (the amount of coverage) less the $5,000 deductible and should award an appropriate amount for any damage to personal property, plus interest at the rate of 9% pursuant to R.S.Mo. § 408.020.  If the jury does not believe the building to be a total loss, then Plaintiff should be awarded the cost of repairing/replacing the building and personal property under the Policy's replacement cost coverage.

### A. Plaintiff's property is a total loss under multiple theories recognized in Missouri law.

The damages to Dimension Church's real property rendered it a total loss under Missouri law, making the proper amount of damages $762,570 for the damage to the building (less the

3

deductible of $5,000) under the Missouri valued policy statute. R.S.Mo. §379.140.1. When a valued policy statute applies, the insurer must accept that the value of the insured property at the time the policy was written is equal to the amount of insurance for which the policy was written. *Polytech, Inc. v. Affiliated FM Ins. Co.,* 21 F.3d 271, 273 (8th Cir. 1994)(*dictum*); *Harris v. Am. Modern Home Ins. Co.,* 571 F. Supp. 2d 1066, 1080 (E.D.Mo. 2008). As noted by the 8th Circuit in *Polytech*, "If a total loss of the insured property occurs, then the insurance company pays the stipulated value; the actual value is irrelevant." 21 F.3d at 272 (quoting *Clark v  Aetna Cas. and Sur. Co.,* 778 F.2d 242, 247 (5th Cir. 1989)).

"As applied to the subject of insurance, the phrase 'total loss' does not mean that the property insured must be entirely annihilated, nor that any portion remaining after the loss shall have no value for any purpose, but it means 'only destruction of the property insured to such extent as to deprive it of the character in which it is insured.'" *Lowry v. Fid.-Phenix Fire Ins. Co.*, 272 S.W. 79, 80 (Mo. App. W. D. 1925). "A structure can be considered a total loss under four different theories: 1) when the structure has lost its identity as a building; 2) when no prudent and uninsured individual would rebuild the structure; 3) when the law prohibits rebuilding; or 4) when rebuilding the structure would be more expensive than simply starting over." *Haught v. State Farm Gen. Ins. Co.*, No. 2:08 CV 20 DDN, 2009 U.S. Dist. LEXIS 64272 at *18, 2009 WL 2235937 (E.D.Mo. July 27, 2009).

Plaintiff's building is a total loss under multiple bases identified in *Haught*. A totally independent and non-retained expert, Dexter city administrator David Wyman, who is a licensed professional engineer in Missouri, submitted correspondence to FEMA regarding the condition of Plaintiff's building. Mr. Wyman's correspondence and report are Plaintiff's Exhibit 27. He stated that "[a]s a licensed professional engineer in the State of Missouri, it is my professional opinion

4

that the current state of this building shows that it has already suffered a partial collapse and is currently at risk of a complete collapse." This would obviously deprive the building's character under which it was insured under *Lowry*, since Plaintiff could no longer use it for religious services or other similar purposes since it was declared as a nuisance. The building is therefore a total loss under the first *Haught* theory.

The building is also a total loss under the second *Haught* theory as well. In 2022, Rahlmann Valuation Services appraised the property and determined that its value was $250,000 (Plaintiff's Exhibit 31). Michael Seabaugh, an expert witness for Plaintiff, determined that the value of Plaintiff's property before the May 2024 tornado was $316,000 and the value of the building immediately after the tornado was $0 (Plaintiff's Exhibit 22). Another division of this Court has expressly contemplated appraisal services as the subject of expert testimony. *See, e.g., Auto Owners Ins. Co. v. Blair Leasing, LLC*, No. 1:19 CV 66 ACL, 2021 U.S. Dist. LEXIS 124290 at *17 (E.D. Mo. July 2, 2021). Defendant designated no expert on this topic and therefore cannot realistically dispute Mr. Seabaugh's testimony on values.

Anna Kangas, an expert witness for Plaintiff, wrote in her report that "[b]ased on recent wood framed commercial structures we have estimated and built at Boulder Construction, the lower-level renovation would cost at least $180/square foot, or $643,658." Ms. Kangas also estimated that "[b]ased on recent wood framed commercial structures we have estimated and built at Boulder Construction, the main level renovation would cost at least $180/square foot, or $1,287,316. This would remove and replace all damaged drywall, wood wall framing, flooring, and electrical from the main level with materials of similar quality." Ms. Kangas also wrote that "[b]ased on recent wood framed commercial roofs we have estimated at built at Boulder the replacement of trusses, roof decking and roofing materials would be approximately $128,101."

Jason Becker, an expert witness for Defendant, stated in his report that the cost to repair the damages to Plaintiff's building just from the damage caused by the falling tree is $331,667.29. Even this lesser figure is more than the value of the building before it was destroyed. Mr. Becker also stated in that report that "[s]hould consideration be made to provide mitigation costs [to deal with the mold and other subsequent damage caused by exposure to the elements] in addition to reconstruction, please find our detailed estimate of repair for reconstruction and mitigation, dated 10/27/2025, totaling $699,833.49." [Bracketed comment added].

In April 2025, the City of Dexter sent correspondence to Chris Masters' home address. It stated that Plaintiff's building was a nuisance as defined by the city code of Dexter, Missouri (Plaintiff's Exhibit 28). The Church was given fifteen (15) days to indicate Plaintiff's intent to demolish or repair its building. The property has since been demolished. Under similar circumstances, Missouri courts have held that the insured suffered a total loss. *See, e.g., Stahlberg v Travelers Ind. Co.,* 568 S.W.2d 79, 84 (Mo. App. E.D. 1978) ("After reviewing these authorities, we conclude that appellant has suffered a total loss in accordance with the general rule. Appellant's building was partially destroyed by fire; he was then prohibited by law from repairing or restoring it and was ordered to demolish the remaining structure pursuant to municipal ordinance. By demolishing his building in compliance with the municipal order, appellant suffered a total loss.").

Also, under Eighth Circuit precedent, "[t]he applicable rule of law approved by this court in *St. Paul Fire & Marine Ins. Co. v. Eldracher*, 8 Cir., 33 F.2d 675, 682, is concisely stated in 26 C.J. 351, as follows:  'If by reason of public regulations as to the rebuilding of buildings destroyed by fire, such rebuilding is prohibited, the loss is total, although some portion of the building remains which might otherwise have been available in reguilding.  So, also, if the insured building is so injured by the fire as to be unsafe and is condemned by the municipal authorities, the loss is

total.'" *Liverpool & London & Globe Ins. Co. v. Neb. Storage Warehouses, Inc*., 96 F.2d 30, 35 (8th Cir. 1938). Here, although the damage was caused by a tornado instead of a fire, the same logic applies, and Plaintiff suffered a total loss of its property.

Under Missouri law, "[w]hen real property incurs a total loss caused by a peril covered under an insurance policy and such total loss is a covered loss under the insurance policy, then the liability of the insurance company writing the policy shall be the amount of money for which the real property was insured, less any deductible, as specified in the policy." R.S.Mo. § 379.140.1. The Policy is subject to a limit of $762,570.  Plaintiff's building suffered the damages at issue, the loss was a covered loss, and the loss was a total loss. Thus, Plaintiff should recover $757,570 (the amount of the insurance limits for real property less the $5,000 deductible) in damages, in addition to pre-judgment interest of nine percent pursuant to R.S.Mo. § 408.020 from the date the claim was denied, July 23, 2024. An award of pre-judgment interest under the facts in this case is mandatory. See *Jablonski* and *Grantham, supra.*

**B. <u>If the building was not a total loss then the policy still authorizes Plaintiff to receive replacement/repair costs for the building.</u>**

If the property is not deemed to be a total loss, then Plaintiff is entitled to receive the replacement cost/cost repair for the building because the Policy provided for replacement cost coverage. The costs of repairing the building either outstrips the limit of coverage for the building by far (Plaintiff's expert's Anna Kangas' estimate) or are very close to it (Defendant's expert Becker's estimate).

### C. **Personal Property Claim.**

In addition, Plaintiff suffered additional damages to its personal property. The Policy provides coverage for personal property losses up to $115,440.  As a part of a submission to FEMA, Dimension Church submitted a damage inventory of its personal property damaged in the storms. FEMA/SEMA have not paid this claim (Plaintiff's Exhibit 29). Overall, Plaintiff suffered $80,000 in damages to its personal property as a result of the May 2024 tornado. These losses are covered by the Policy and Plaintiff is entitled to reimbursement for them for the same reasons it is entitled to the value of the insurance policy.

The total damages for breach of contact are $837,570. Plaintiff is entitled to pre-judgment interest at the rate of 9% on this figure pursuant to R.S.Mo. §408.020 from July 23, 2024.

### D. **Plaintiff's vexatious refusal claim should be submitted to the jury, and there is no legitimate dispute regarding damages that Plaintiff has suffered. Even if there is a dispute as to damages, Missouri law expressly provides that such a dispute does not foreclose a vexatious refusal claim.**

"To recover for vexatious refusal to pay, one must show the insurer's refusal to pay a loss was willful and unreasonable to a reasonably prudent person. The existence of a litigable issue will not preclude liability if the insurer was vexatious and recalcitrant. A refusal to pay, based on a suspicion without substantial facts to support that suspicion, is vexatious." *Laster v. State Farm Fire & Cas. Co.*, 693 S.W.2d 195, 197 (Mo. App. E.D. 1985) (internal citation omitted). The Court, in its ruling granting partial summary judgment for Plaintiff, found that there was an adequate basis to submit the vexatious refusal claim to the jury. *See* Doc. 38.

In a May 7, 2026 teleconference, the Court asked the parties to brief the issue of whether a legitimate dispute about the amount of damages bars Plaintiff's vexatious refusal claim. Presumably, the Court was referencing a prior decision in another division of the Court granting summary judgment for an insurer on a vexatious refusal claim. *See, e.g., Ceramo Co. v. Hartford*

*Fire Ins. Co.*, No. 1:05cv0098 TCM, 2006 U.S. Dist. LEXIS 67403, at *11-12 (E.D. Mo. Sep. 20, 2006) ("Hartford was not obligated to make an advance payment on Ceramo's business interruption claim as long as there was or is a legitimate dispute about the total value of the claim. The parties agree that such a dispute exists. Hartford cannot be liable for a vexatious delay in payment if the parties' dispute about the amount to be paid to Ceramo on its business interruption claim relieved Hartford of any obligation to make early payments on that claim.").

Initially, Church Mutual did not deny the claim due to a disagreement over the amount of damages claimed. Unlike in *Ceramo*, Church Mutual disputed whether Plaintiff's claim should have been paid at all and moved for summary judgment on the point. *Compare Ceramo*, 2006 U.S. Dist. LEXIS 67403, at *11 ("The parties agree that Hartford acted quickly in investigating and covering Ceramo's property damage loss and that there was approximately a five-month delay from the date of the tornado to the first partial payment on Ceramo's business interruption claim. The parties further agree that Hartford has paid to date approximately $ 1.5 million on Ceramo's business interruption claim, and agree that they disagree about how to calculate that claim, each side using a different methodology.") *with* Docs. 23-25, Doc. 35. Church Mutual did not merely dispute the value of Plaintiff's claim, it expressly refused to pay the claim at all, and required Plaintiff to file this case and litigate for years when the insurance policy was not cancelled as a matter of Missouri law. *See* Doc. 38 at pp. 10-11. *Ceramo* is distinguishable in numerous respects and should be disregarded by this Court.

Moreover, Missouri caselaw provides that "[t]he existence of a litigable issue will, however, not preclude a penalty if the insurer's attitude is shown to be vexatious and recalcitrant." *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. App. E.D. 1998) (citation omitted). The Missouri Supreme Court has indicated that the reasons for an insurer to be deemed vexatious

include "the adequacy of their investigation of the claim and finally the explanation given by the insurer for denying the claim." *De Witt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984). Here, Church Mutual did not investigate Plaintiff's claim, but rather summarily denied it within a few days while giving a reason for denial that was patently incorrect as a matter of law (that the insurance policy was cancelled). *See* Doc. 38 at pp. 5-6.

Church Mutual claims representative Carmen Waukau, who made the decision to deny the claim, testified in her deposition as follows:

Q. I tell you what, I'm just going to read this to you and tell me --

A. Certainly.

Q. -- tell me if it's true.

The answer to interrogatory No. 10 -- you may have an earlier, no, actually you should have, since I marked it as Exhibit 1, the final answers.

But, it says: To the best of Church Mutual's knowledge, Church Mutual representative Carmen Waukau also spoke with Plaintiff's counsel Mark Blanton via telephone on or about July 19th, 2024 and July 23, 2024 regarding Plaintiff's claim.

A. Correct. I see that.

Q. Sure. And is that correct?

A. To the best of my knowledge yes.

Q. And do you recall those conversations or do you have notes that you could tell me what was discussed during those conversations?

A. During the first conversation on July nineteenth we discussed our concerns about coverage and due -- and lack of a policy being in place or in force on the date of loss. On the

second phone call -- July twenty-third – we informed him that there would be no coverage for the claim based on the fact that there was no policy in effect on the date of loss.

Q. And can you tell me what you did, if anything, between July nineteenth, the first conversation, and July twenty-third, the second conversation?

A. I obtained a copy of the cancellation form, reviewed their policy, and discussed with my management, manager, supervisor at the time Shannon our coverage process.

Q. And I don't know the hierarchy at Church Mutual.· Is there anybody I will say -- and I mean no offense by this --higher in the chain than Shannon who was involved in that decision?

A. Well, at the time Shannon was my supervisor so she would have had a manager over her, but she is currently now our director -- our Claims Director.

Q. Do you know if anybody other than Shannon and you was involved in the decision to deny the claim due to the lack of a policy?

A. Yes.

Q. All right.· And who else was involved?

A. Church Mutual counsel reviewed the claim.

Waukau Dep. 17:8-18:25.

Church Mutual Corporate Representative Richard Hammond Moore testified similarly:

Q.· Well, and the reason why the cancellation is significant is that it's Church Mutual's position that there was no coverage in force during the tornado in May of 2024; correct?

A.· That is correct.

Hammond-Moore Dep. 15:5-9.

Plaintiff's Exhibits 9, 10, and 11 make clear that Church Mutual denied the claim for one reason, the purported cancellation of the policy which this Court has found was not effective. This

11

Court has found that denial to be a material breach of the insurance contract. *Id*. at pp. 10-11. These are clearly circumstances contemplated by *De Witt* as being grounds for vexatious refusal, and this Court must use the same criteria to evaluate the claim as the Missouri Supreme Court does. Plaintiff's vexatious refusal claim must go forward.

*Ceramo* is also distinguishable for another reason. While the parties dispute the amount of damages suffered by Plaintiff, that dispute is a false issue, because the property was a total loss under the methods previously recognized by this Court in *Haught* and mentioned above. Church Mutual cannot dispute the testimony as to the valuations Mr. Seabaugh provided because it did not retain an expert on the valuation of Plaintiff's building and valuation is an area in which the Court requires expert testimony under *Blair Leasing*. Church Mutual also cannot dispute the conclusions of its own damages expert, Jason Becker, who estimated that the damages suffered by Plaintiff to its building were a little over $330,000 (which is in excess of the $316,000 valuation of the building by Mr. Seabaugh at the time of the tornado) not including the damages "for mitigation." If the mitigation damages are included, Becker estimates the cost of repair at approximately $700,000.

There is no valid dispute as to the valuation of Plaintiff's claim, as *Haught* expressly contemplates that, if only one of its prongs are met (such as the damages exceeding the total value of the building, which Church Mutual cannot dispute), the damages to Plaintiff's property constitutes a total loss. If the property is a total loss (which it is), Plaintiff must collect the full amount of the value of the insurance policy under R.S.Mo. § 379.140.1, and this is an issue of substantive state law under *Erie*. Plaintiff's vexatious refusal claim must therefore proceed.

Defendant's refusal to pay Plaintiff's claim was and is willful and unreasonable, considering Plaintiff's loss is covered by the insurance policy and Defendant did not provide proper notice to Dimension that its insurance policy was cancelled. This issue was specifically

12

pointed out to Church Mutual in the claims process, but it nonetheless denied the claim on that basis. Moreover, it has refused to stipulate that Plaintiff's property is a total loss. Plaintiff has retained expert witness Ron Clifton, who referenced all these matters in his report. Notably, Defendant has not retained any expert witness on the subject and is presumably relying on its own knowledge/expertise to counter Plaintiff's allegations. If the jury sides with Plaintiff and against Defendant on this issue, Defendant will be subject to the vexatious refusal penalties and attorney's fees under Missouri statute. R.S.Mo. § 375.420.

The jury will be asked whether Plaintiff should prevail on its vexatious refusal to pay claim and, if so, how much the penalty should be. The jury can award up to 20% of the first 1,500 of the loss and 10% of the balance of the loss. If the jury finds that Church Mutual acted vexatiously and unreasonably, then, in addition, Plaintiff can file a Motion for attorney's fees pursuant to Local Rule 8.02 and the Eighth Circuit's decision in *Wiley, supra.*

Respectfully submitted,

**BLANTON, COLLINS, DOUGLAS, HANSCHEN, & PETERS, LLC**

*/s/ Joseph C. Blanton, Jr.*

Joseph C. Blanton, Jr.     #32769MO
Mark D. Blanton            #71791MO
219 South Kingshighway
Sikeston, MO 63801
(573) 471-1000 (telephone)
(573) 471-1012 (facsimile)
jblanton@blantonlaw.com
mblanton@blantonlaw.com
*Attorneys for Plaintiff*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that Plaintiff's Trial Brief was sent to all attorneys of record on May 14, 2026 via the Court's electronic filing system. I further certify that I signed the original of this document and will keep said original for a period of not less than the maximum allowable time to complete the appellate process.

*/s/ Joseph C. Blanton, Jr.*
Joseph C. Blanton
